**AMERICAN HOME ASSURANCE COMPANY; AIU Company, Plaintiffs,**

v.

**TGL CONTAINER LINES, LTD.; Trans Global Logistics(S) Pte Ltd.; Hanjin Shipping Company Ltd.; M/V Hanjin Pennsylvania, Defendants.**

**TGL Container Lines, Ltd.; Trans Global Logistics(S) Pte Ltd., Third–Party Plaintiffs,**

v.

**The Hanjin Pennsylvania; Hanjin Shipping Company Ltd., Third–Party Defendants.**

**No. C 03–5190MHP.**

United States District Court, N.D. California.

Dec. 7, 2004.

Marilyn Raia, Bullivant Houser Bailey PC, San Francisco, CA, for Plaintiffs.

Gary Edward Davidson, Rasco Reininger Perez & Esquenazi, Coral Gables, FL, Ronald Edward Mallen, Cassidy E. Chivers, Hinshaw & Culbertson, San Francisco, CA, for plaintiffs and Defendants.

Michael Lee Swain, Swain & Dipolito, Long Beach, CA, for Defendants.

***MEMORANDUM AND ORDER Re: Hanjin's Motion to Dismiss Third-Party Complaint; Trans Global's Motion for Summary Judgment; Trans Global's Motion for Leave to Amend Answer and Third-Party Complaint***

PATEL, District Judge.

Plaintiffs American Home Assurance Co. and AIU Co. filed this action in admiralty seeking to recover damages allegedly caused by a fire aboard the vessel M/V Hanjin Pennsylvania ("the Pennsylvania"). Defendants TGL Container Lines, Ltd. ("TGL") and Trans Global Logistics(s) Pte Ltd. ("TGX") (collectively "Trans Global") denied liability and filed a third-party complaint impleading the Pennsylvania and Hanjin Shipping Co. ("Hanjin"). Now before the court is Hanjin's motion to dismiss Trans Global's third-party complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

*BACKGROUND*

This action seeks to establish liability for the loss of goods at sea during a fire that occurred aboard the defendant vessel. Plaintiffs American Home Assurance Co. and AIU Co. are subrogated insurers of three shipments of goods that were aboard the Pennsylvania at the time that the fire broke out. Pls.' First Amended Compl. ¶ 8. Defendants and third-party plaintiffs TGL and TGX are non-vessel operating

common carriers ("NVOCCs") who arranged for the transport of goods aboard the Pennsylvania on behalf of plaintiffs' subrogors or their agents. Defs.' Third–Party Compl. ¶ 7.[1] Defendant and third-party defendant Hanjin is a South Korean Corporation that chartered the Pennsylvania for the purpose of shipping the allegedly damaged goods. *See* Zhi Decl., Exhs. A–C.

The events that gave rise to this action occurred in November 2002. At that time, Trans Global arranged with plaintiffs' subrogors to have three shipments of clothing transported from Shanghai, China to two destinations in Europe (Felixstowe, United Kingdom and Rotterdam, The Netherlands). Joint Statement of Undisputed Facts ¶ 2. While en route to Europe, a fire broke out aboard the Pennsylvania, allegedly damaging two shipments of men's shirts insured by plaintiffs. *See* Pls.' First Amended Compl. ¶¶ 7–9 & Schedule A; Joint Case Management Conference Statement, Attachment A at 1 (June 6, 2004).[2] A third shipment was not damaged in the fire but was delivered subject to a lien for collectible salvage and general average expense. Joint Case Management Conference Statement, Attachment A at 1; Joint Statement of Undisputed Facts ¶ 4.

On November 21, 2003, plaintiffs filed this action in admiralty seeking damages against Trans Global. Plaintiffs also request declaratory judgment that they have no liability for general average contribution. To establish this court as a proper venue for their action, plaintiffs rely on the "Governing Law and Jurisdiction" clause in the bills of lading[3] that Trans Global issued to their subrogors, which provides in relevant part that "any action or other dispute [under the bills of lading] shall be brought before the California Courts unless the Carrier otherwise agrees in writing." Resp. to Pls.' Req. for Judicial Notice, Exh. A ¶ 21(a).

On May 7, 2004, Trans Global answered plaintiffs' complaint and filed a third-party complaint against Haijan and the defendant vessel, seeking indemnity, contribution, and enforcement of a maritime lien. On August 26, 2004, Haijan filed a motion to dismiss all claims against it pursuant to the forum selection clause of the bills of lading issued to plaintiffs' subrogors. In the alternative, Hanjin sought dismissal of the complaint and third-party complaint on the ground of forum non conveniens. As

---

1. An NVOCC is defined by federal statute as "a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 U.S.C. app. § 1702(17)(B). Generally, an NVOCC enters into contracts with shippers "to transport their goods on a voyage that includes an ocean leg. An NVOCC commonly issues bills of lading to its customers in its own name, even though it does not operate the ship that will carry the goods on the ocean." *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1176 (9th Cir.2002) (quoting Martin Davies, *In Defense of Unpopular Virtues: Personification and Ratification*, 75 Tul. L.Rev. 337, 395–96 (2000)), *vacated on other grounds*, 71 U.S.L.W. 3400, 73 U.S.L.W. 3058 (2004).

2. On July 29, 2004, the parties stipulated to the dismissal of plaintiffs' claim for reimbursement as it pertained to a fourth shipment of goods. Stipulation & Order of Partial Dismissal at 1–2.

3. A bill of lading is a document signed by the carrier or its agent acknowledging that goods have been shipped on board a specific vessel bound for a particular destination and stating the terms on which the goods are to be carried. *Interline v. Zim Israel Navigation Co.*, No. C 00–0939 SC, 2000 WL 1060445, at *2 (N.D.Cal. July 27, 2000) (Conti, J.). If issued by a common carrier, the bill of lading serves as evidence of the contract of carriage. *Id.*

an alternative forum for this action, Hanjin has identified the High Court of Justice, Queen's Bench Division of the Admiralty Court in London, England, a venue in which Hanjin is currently defending claims brought by at least seventeen cargo owners who represent approximately seventy percent of the known cargo damage that resulted from the fire aboard the Pennsylvania. Hoyes Decl. ¶¶ 2, 7 & Exh. C.

On September 2, 2004, this court issued an order granting Hanjin's motion to dismiss plaintiffs' complaint pursuant to a stipulation of the parties. Order Approving Stipulation of Dismissal at 1–2. However, Trans Global continues to oppose Hanjin's motion to dismiss its third-party complaint. In addition, on September 24, 2004, Trans Global filed a motion for summary judgment that plaintiffs are bound by the forum selection clause in Hanjin's bills of lading, thereby requiring the court to dismiss all claims in this action for improper venue. Plaintiffs oppose this motion, arguing, *inter alia*, that Trans Global waived its right to object to improper venue by failing to raise the issue in its motion to dismiss filed on March 15, 2004 and by failing to plead improper venue as an affirmative defense in answering plaintiffs' complaint. *See* Fed. R. Civ. Pro. 12(h). In response, Trans Global moved for leave to amend its answer and third-party complaint for the purpose of asserting defenses based on improper venue, forum non conveniens, impossibility of performance, and the fire exemption provision of the Carriage of Goods at Sea Act ("COGSA"), 46 U.S.C. app. § 1304(2)(b). This court consolidated proceedings on all pending motions and heard arguments from the parties on November 15, 2004. This order addresses the issues raised by the parties in their briefs and at the November 15 hearing.

## LEGAL STANDARD

### I. Motion to Enforce Forum Selection ·Clause

A motion to enforce a forum selection clause is treated as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir. 2002), *vacated on other grounds*, —— U.S. ——, 125 S.Ct. 494, 160 L.Ed.2d 368 (2004). Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered. *Id.* Nonetheless, the trial court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.* 362 F.3d 1133, 1138 (9th Cir.2004). The enforceability of the forum selection clause is determined according to federal ·law. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996).

Under the "prevailing rule" established by the Supreme Court. in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), a forum selection clause is presumptively valid if "venue is specified with mandatory language." *Docksider, Ltd., v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir.1989). To overcome such mandatory language, the party seeking to avoid the chosen venue must demonstrate that requiring litigation in the selected forum or fora would be " 'unreasonable' under the circumstances." *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir.1997) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)), *cert. denied*, 525 U.S. 921, 119 S.Ct. 275, 142 L.Ed.2d 227 (1998). Absent a strong showing to that effect, the clause will deprive courts in other jurisdictions of venue over both *in personam* and *in rem* claims that fall within its scope.

See id. In contrast, "[w]hen only jurisdiction is specified[,] the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider,* 875 F.2d at 764.

## II. *Forum Non Conveniens*

 Under the doctrine of forum non conveniens, a district court has discretion to dismiss an action, even if jurisdiction and venue are properly established, when (1) a foreign country also has jurisdiction to hear the case; and (2) either trial in the chosen American forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or the chosen American forum is inappropriate because of considerations affecting the court's own administrative and legal problems. *American Dredging Co. v. Miller,* 510 U.S. 443, 447–49 & n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285, (1994); *see also Piper Aircraft v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). At the outset of any forum non conveniens inquiry, the court must determine whether an alternative forum exists. *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1143 (9th Cir. 2001). Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the foreign jurisdiction. *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. 252. However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.*

 If the court concludes that there is an adequate alternative forum to adjudicate the parties' dispute, it must then determine whether the balance of the "private interest" and "public interest" factors weighs in favor of dismissing the action.

*Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. 252; *Lueck,* 236 F.3d at 1142. Relevant private interests include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for unwilling witnesses; (3) the comparative cost of obtaining willing witnesses; (4) the possibility of a view of any affected premises; (5) the ability to enforce any judgment eventually obtained; (6) and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Ravelo Monegro v. Rosa,* 211 F.3d 509, 512 (9th Cir.2000), *cert. denied,* 531 U.S. 1112, 121 S.Ct. 857, 148 L.Ed.2d 771 (2001). Public interest factors include: (1) court congestion; (2) the unfairness of burdening citizens in an unrelated forum with jury duty; (3) the interest in having localized controversies decided at home; (4) the interest in trying the case in a forum familiar with the applicable law; and (5) the interest in avoiding unnecessary conflicts of laws. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *Rosa,* 211 F.3d at 512. The defendant bears the burden of showing that, in light of these factors, "exceptional circumstances" warrant dismissal on forum non conveniens grounds. *Sarei v. Rio Tinto PLC,* 221 F.Supp.2d 1116, 1164–65 (C.D.Cal.2002). Ultimately, this determination is committed to the "sound discretion" of the district court. *Lueck,* 236 F.3d at 1143.

## DISCUSSION

### I. *Hanjin's Motion to Dismiss Third-Party Complaint*

The court first addresses Hanjin's motion to dismiss Trans Global's third-party complaint. Hanjin's motion to dismiss relies on the forum selection clause found in three bills of lading issued to plaintiffs' subrogors as evidence of the contracts for

the carriage of goods aboard the Pennsylvania. Paragraph 3(a) of each bill of lading provides:

> (a) Disputes arising under the Bills of Lading shall be determined at the option of the Merchant by the courts and in accordance with the law (including choice of law) at (i) the Carrier's principal place of business (being Seoul, Korea, except for actions under U.S. COGSA, where the Carrier's principal place of business also includes Long Beach, California); or (ii) the place of receipt of the Goods by the Carrier, or the port of discharge.

Zhi Decl., Exh. A at 2 ¶ 3(a). On its face, the clause specifies four possible venues for litigating disputes that arise under a particular bill of lading: (1) the place where Hanjin received the goods for shipment; (2) the place where the goods were delivered to Hanjin; (3) South Korea; and (4) if the dispute arises under the COGSA, 46 U.S.C. app. § 1300 *et seq.*, Long Beach, California. Because none of these locations falls within the Northern District of California, Hanjin argues that the plain meaning of the bills of lading requires the court to dismiss the third-party complaint for improper venue. In opposing Hanjin's motion, Trans Global asserts that the forum selection clause in the bills of lading is unenforceable. Alternatively, Trans Global argues that even if the forum selection clause is enforceable in general, it should not be enforced here because Hanjin failed to provide it with adequate notice of the provision. Trans Global also asserts that venue is proper in this district under the theory of ancillary venue. Finally, Trans Global argues that even if venue in this district is improper, the court may transfer the action to Long Beach, California pursuant to 28 U.S.C. § 1404. The court addresses each of these arguments below.

## A. *Enforceability of Forum Selection Clause*

In considering the enforceability of the forum selection clause in Hanjin's bills of lading, the court must first determine whether the clause is "permissive" or "mandatory." As discussed above, a contractual forum selection clause is presumptively enforceable if the clause specifies venue with mandatory language rather than merely designating a jurisdiction in which actions to enforce the terms of contract may be brought. *Bremen,* 407 U.S. at 10, 92 S.Ct. 1907; *Docksider,* 875 F.2d at 764. Here, paragraph 3(a) of the bills of lading expressly identifies the venues in which the shipper may bring an action "arising under" the bills of lading: namely, the place of receipt of the goods, the place of discharge, and Hanjin's principal place or places of business. Zhi Decl., Exh. A at 2 ¶ 3(a). The exclusive nature of these venues is emphasized by paragraph 3(b), which provides that "[n]o proceedings may be brought before other tribunals by the Merchant unless the Merchant and Carrier have agreed in advance in writing in both the choice of another tribunal and the law to be applied." *Id.* ¶ 3(b). This provision would serve no purpose if paragraph 3(a) were solely meant to confer jurisdiction. Thus, the forum selection clause clearly intends to designate the exclusive fora in which disputes that arise under the clause may be heard.

Despite Hanjin's use of mandatory language, Trans Global argues that the clause is ambiguous and therefore unenforceable. Focusing on one of the alternative fora, "the port of discharge," Trans Global points out that shippers routinely enter into contracts with NVOCCs for the carriage of goods to more than one destination, depriving them of certainty as to which of these "ports of discharge" would be the proper venue for resolving a partic-

ular dispute. Trans Global also observes that plaintiffs' complaint alleges that some of the goods aboard the Pennsylvania never arrived at their destination, exacerbating the .dilemma faced by a shipper attempting to choose a proper forum in which to file suit. According to Trans Global, such uncertainty renders the forum selection clause in the bills of lading invalid.

■■■■ It is true that "[b]ills of lading are contracts of adhesion, usually drafted by the carrier, and are therefore·strictly construed against the carrier." *All Pac. Trading, Inc. v. M/V Hanjin Yosu,* 7 F.3d 1427, 1431 ( 9th Cir.1993) (internal quotation marks omitted), *cert. denied, Hanjin Container Lines, Inc. v. Tokio Fire & Mar. Ins. Co., Ltd.,* 510 U.S. 1194, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994). At the same time, a contract of carriage need not define every term with absolute clarity to be enforceable. For example, in *Union Steel America Co v. M/V Sanko Spruce* ("*Union Steel I*"), 14 F.Supp.2d 682 (D.N.J.1998), the court was presented with the argument that a forum selection clause should not be enforced because the clause gave the carrier the option of litigating in the carrier's home forum or submitting to arbitration in New York. *Id.* at 687. The plaintiff argued that the clause was invalid because the contract did not unambiguously resolve which entity was the "carrier" and thus might induce the plaintiff to file a claim in the wrong forum. *Id.* The court rejected this argument, observing:

> That a potential plaintiff cannot be certain as to where it should bring suit does not mean that the forum selection clause no longer is mandatory. If the clause is not clear, and the parties dispute its meaning, then litigation might be necessary to secure a controlling interpretation. But this contractual provision

does not cease to bind simply because it ·requires a court to interpret it.

*Id.* The Ninth Circuit reached a similar result in *Fireman's Fund,* concluding that some uncertainty as to where an action may be brought does not rise to the level of a "serious inconvenience" that would invalidate an otherwise enforceable forum selection clause. 131 F.3d at 1338 (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)). The clear implication of these cases is that a forum selection clause will not .be deemed permissive or unenforceable solely because its terms may give rise to disputes concerning the propriety of a particular venue. Thus, the fact that the parties might require the court to determine where the "place of receipt" of the cargo is located or where Hanjin's principal place of business is domiciled does not alter the mandatory character of the forum selection clause in Hanjin's bills of lading.

■■ Of course, even if ·a forum selection clause is mandatory, it will not be enforced if it would be "unreasonable under the circumstances" to require the parties to litigate their dispute in the venue or venues identified in the clause. *The Bremen,* 407 U.S. at 10, 92 S.Ct. 1907 (original quotation marks omitted); *Fireman's Fund,* 131 F.3d at 1338. Ignoring the implications of the Supreme Court's use of the phrase "under the circumstances," Trans Global asserts as a general proposition of maritime law that a forum selection clause is unreasonable and therefore invalid if it designates more than one or perhaps more than two venues as the exclusive jurisdictions for enforcing a contract for the carriage of goods. However, the weight of authority in this circuit and elsewhere gainsays the notion that any per se rule limits the number of venues that parties to a contract may designate as proper fora for litigation. For example, in *Union*

*Steel America Co. v. M/V Sanko Spruce* (*Union Steel II* ), No. Civ. 98–504–KI, 1998 WL 1085910 (D.Or. Aug. 11, 1998), the court considered the enforceability of a "carrier's option" clause in a bill of lading that allowed the carrier to elect either to sue in its principal place of business (Korea) or to submit to arbitration in New York. *Id.* at *1. Citing *Bison Pulp & Paper Ltd. v. MV Pergamos,* No. 89 Civ. 1392(MJJ), 1995 WL 880775 (S.D.N.Y. Nov. 29, 1995), the court concluded that the mandatory nature of the clause "is not affected by the fact that the carrier … has the option to arbitrate the dispute in New York." *Id.* at *5. The court proceeded to enforce the forum selection clause, concluding that it "mandates that litigation take place in one of two contemplated fora and thereby excludes all other fora." *Id.* (quoting *Bison Pulp & Paper,* 1995 WL 880775, at *11).

Relying primarily on *Union Steel II* and *Bison Pulp & Paper,* Trans Global attempts to deduce a rule under which all forum selection clauses that contemplate more than two fora are unenforceable. However, as the above discussion makes clear, these cases merely held that forum selection clauses specifying two alternative venues are enforceable without speculating as to the consequences of adding a third or even fourth alternative venue to the mix. A better case can be made that Trans Global's position is supported by this court's decision in *LG Electronics, Inc. v. Fritz Transportation International,* No. C 00–4507 SI, 2001 WL 1843715 (N.D.Cal. Oct. 2, 2001) (Illston, J.). In *LG,* the defendant carrier issued a bill of lading stating that "all claims or disputes hereunder … shall be determined in the United States according to U.S.A. law," provided, however, that "at the option of the Carrier," venue would be proper in the jurisdiction in which the cargo was accepted by the carrier, at the ports of loading or

discharge, at the transshipment port, or at the place of delivery. *Id.* at *1. The court held that the carrier's option provision of the bill of lading was unenforceable, concluding that "where the selection agreement allows defendant to chose among six fora at will and at any time during litigation, the agreement creates uncertainty and possibly great inconvenience and does not provide the 'compelling reason why a private international agreement should be given full effect.'" *Id.* at *3 (quoting *The Bremen,* 407 U.S. at 13, 92 S.Ct. 1907).

In reaching this conclusion, the court relied heavily on the sheer number of fora in which venue could be deemed proper at the option of the defendant carrier, as well as on the lack of conditions imposed on when and how the carrier could exercise its option. *See id.* However, the forum selection clause at issue here differs from the clause invalidated by the *LG* court in several important respects. First, in contrast to the carrier's option clause at issue in *LG,* Hanjin's bills of lading provide that any one of the several alternative fora contemplated by the parties may be selected by the "Merchant"—i.e., the shipper, or in this case, its subrogee. Zhi Decl., Exh. A at 2 ¶ 3(a). This allows potential plaintiffs to select one of several possible venues for the litigation at the outset of the suit, limiting the uncertainty and inconvenience that so troubled the *LG* court. Second, the sheer number of fora available for enforcing the bill of lading in *LG*—no fewer than six, in the court's estimate—is simply not present here. Hanjin's bills of lading specify a total of four venues, only three of which apply to shipments that are not governed by COGSA. Thus, the court finds that *LG* is distinguishable from the instant case.

■ In any event, Trans Global's attempt to deduce a hard-and-fast rule that

would limit the number of fora that can be included in a forum selection clause misunderstands the court's role in determining the reasonableness of the parties' choice of venue. Indeed, what is apparent from *Bison Pulp & Paper, Union Steel II,* and *LG* is the case-by-case nature of the inquiry into the reasonableness of enforcing a forum selection clause against a particular plaintiff. In undertaking this inquiry, the court must look to the three factors that the Supreme Court set forth in *The Bremen:* (1) whether the incorporation of the forum selection clause into the contract was "the result of fraud, undue influence, or overweening bargaining power"; (2) whether the selected forum is so "gravely difficult and inconvenient" that the complaining party will for all practical purposes be deprived of its day in court; and (3) whether enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Argueta,* 87 F.3d at 325 (citing *The Bremen,* 407 U.S. at 12–13, 15, 18, 92 S.Ct. 1907) (internal quotation marks and citations omitted). Unless Trans Global can carry the "heavy burden" of proving that one or more of these factors is present, *see Fireman's Fund,* 131 F.3d at 1338, it is bound by the terms of the parties' agreement.

 As to the first two factors, Trans Global has failed to introduce even a scintilla of evidence that suggests that it was induced to enter into the contract with Hanjin by fraud or undue influence or that it would suffer "grave inconvenience" from litigating this action in any of the venues identified in the bills of lading. Likewise, the court finds no strong public policy in favor this court's involvement in a dispute that arises out of the shipment of clothing from Asia to Europe. Indeed, the Supreme Court has emphasized a number of important policy considerations that support the enforcement of forum selection clauses in international contracts, including the comity of nations and the economic benefit that generally accompanies the enforcement of freely bargained agreements. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 537–38, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *Shute,* 499 U.S. at 594, 111 S.Ct. 1522; *see also Kukje Hwajae Ins.,* 294 F.3d at 1175–76 (enforcing bill of lading that required shipper and its subrogee to bring action in Seoul, South Korea). Thus, the court finds that Trans Global has failed to meet is burden of proving that the venues chosen in Hanjin's bills of lading are unreasonable. The court therefore holds that the forum selection clause in the bills of lading is valid and enforceable.

### B. *Lack of Notice*

 Trans Global next argues that even if the forum selection clause is valid, the clause can not be constitutionally enforced in the instant case because Hanjin failed to provide Trans Global with notice that the clause was included in the contract. As Trans Global points out, a forum selection clause contained in certain maritime contracts may be unenforceable on due process grounds if the clause fails the "reasonable communicativeness test" set forth in *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861 (1st Cir.1983) and adopted by the Ninth Circuit in *Wallis v. Princess Cruises, Inc.,* 306 F.3d 827 (9th Cir.2002). The test, most frequently applied to contracts between cruise lines and their passengers, has been described by the Ninth Circuit as "an analysis of the overall circumstances on a case-by-case basis, with an examination not only of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Wallis,* 306 F.3d at 835 (quoting *Deiro v. American Air-*

*lines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987)) (internal alterations and quotation marks omitted).

While the Ninth Circuit has applied the reasonable communicativeness test to invalidate a clause limiting a cruise line's liability for the wrongful death of a passenger, *see id.* at 837–40, it is doubtful that the test is tailored to the type of commercial shipping contract at issue here. Indeed, the Third Circuit has observed that where a forum selection clause is the product of an arms-length bargain between "sophisticated commercial entities," the fact that "there may not have been actual negotiations over the terms of the contract does not affect its validity." *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir.) (citing *The Bremen*, 407 U.S. at 12, 92 S.Ct. 1907), *cert. denied*, 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). Because that is precisely the circumstance under which this case arises, a more apposite line of cases has considered whether commercial shipping contracts are enforceable even through the carrier failed to issue a bill of lading to the shipper. For example, in *Luckenbach S.S. Co. v. American Mills Co.*, 24 F.2d 704 (5th Cir.1928), a carrier sought to enforce a provision in a bill of lading exempting it from liability for loss of goods by fire despite the fact that no bill of lading had been issued before the fire occurred. *Id.* at 705. The court held that the limitation on liability was enforceable so long as it served as evidence of a contract governing the relationship of the shipper and the carrier and would have been issued in the ordinary course of business. *Id.*

In *Interline v. Zim Israel Navigation Co.*, No. C 00–0939 SC, 2000 WL 1060445 (N.D.Cal. July 27, 2000) (Conti, J.), this court applied *Luckenbach* to a dispute involving the forum selection clause in a common carrier's bill of lading. Because the shipper's cargo was never loaded on the carrier's vessel, no bill of lading was issued for the shipment. *Id.* at *1. Nonetheless, the court held that parties were bound to the forum selection clause in the shipper's unissued bill of lading because the bill of would have been issued in the ordinary course of business and was of the type reasonably expected in other carrier's bills of lading. *Id.* at *3.

Trans Global suggests that Hanjin's bills of lading are distinguishable from those in *Interline* because a shipper would not reasonably expect the bills of lading to permit litigation in as many as four different venues. However, it is important to recognize that *Interline* applied a "reasonable expectation" test under circumstances where the shipper *did not issue* a bill of lading. Attempting to establish this fact in the instant case, Trans Global submits the declaration of River Wu, the manager of the TGL office in Shanghai. Wu Decl. ¶ 1. According to Wu, a search of the files at TGL's Shanghai office yielded no evidence that TGL ever received Hanjin's bills of lading. *Id.* ¶¶ 4–8. At best, the Wu Declaration establishes that one TGL office failed to receive bills of lading evidencing the contract to ship the allegedly damaged goods. However, it is undisputed that "Hanjin issued Bills of Lading to defendant NVOCCs or *their agents* evidencing the contracts of carriage." Joint Case Management Conference Statement, Attachment A at 1 (emphasis added). Specifically, Hanjin submits that it issued bills of lading for the allegedly damaged goods to TGAX Logistics (HK), Ltd. and TGAX Logistics (China), Ltd. for carriage aboard the Pennsylvania. Zhi Decl. ¶¶ 4–12. Thus, unlike *Interline*, the instant action does not involve a shipment where the carrier failed to issue a bill of lading, and it is doubtful that *Interline's* "reasonable ex-

pectation" test applies to the forum selection clause at issue here.

Furthermore, even assuming that *Interline* governs the instant action because Hanjin has failed to establish an agency relationship between TGL and the two TGAX Logistics entities to whom the bills of lading were issued, the court finds that those bills of lading easily satisfy *Interline's* requirements. There is no evidence to suggest that the bills of lading at issue are anything but the standard form contract that accompanies each shipment of goods aboard Hanjin's vessels. *See Interline,* 2000 WL 1060445, at *3; *cf. Fireman's Fund,* 131 F.3d at 1338 (finding "no merit" to the plaintiff's claim that forum selection clause requiring litigation in Korea is invalid because the bill of lading in which it was included was a contract of adhesion). Moreover, although Trans Global argues that it could not reasonably expect to be subject to a forum selection clause that permits litigation in multiple fora, this assertion is contradicted by Trans Global's own citations to cases that upheld the validity of forum selection clauses that had precisely that effect. *See Union Steel II,* 1998 WL 1085910, at *5; *Bison Pulp & Paper,* 1995 WL 880775, at *11.

█ Finally, lest there be any doubt that Trans Global is bound by the terms of the bills of lading, the Ninth Circuit has made it clear that a party accepts the terms of a contract for the carriage of goods at sea by the act of filing a suit to enforce that contract. *All Pac. Trading,* 7 F.3d at 1432 (holding that a shipper accepted the terms of a carrier's bill of lading by initiating suit on the contract). Accordingly, Trans Global accepted the terms of Hanjin's bills of lading by filing its third-party complaint in the instant action. Thus, even assuming that the bills of lading were never received by TGL or its agents, the court holds that Trans Global is bound by their terms, including the forum selection clause.

## C. *Applicability of COGSA*

Having established that the forum selection clause must be enforced, the court now turns to Trans Global's assertion that Long Beach, California is a proper venue for this action. As previously noted, the bills of lading identify Hanjin's principal place of business as Seoul, South Korea unless the claim is governed by COGSA. Zhi Decl., Exh. A at 2 ¶ 3(a). If COGSA applies, the clause also designates Long Beach as one of Hanjin's principal places of business and therefore as a proper venue for resolving the parties' dispute. *Id.* Trans Global asserts that the its third-party complaint arises under COGSA, thereby allowing the court to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404.

█ The court finds this argument without merit. Under 46 U.S.C. app. § 1300, COGSA applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. app. § 1300; *see also Sea–Land Serv., Inc. v. Lozen Int'l., LLC.* 285 F.3d 808, 816 (9th Cir.2002). It is undisputed that the bills of lading at issue here involve shipments between two foreign ports. Nonetheless, citing the well-established maxim that parties to a contract of carriage may voluntarily contract into the COGSA regime, *see, e.g., Institute of London Underwriters v. Sea–Land Service, Inc.,* 881 F.2d 761, 764 (9th Cir.1989), Trans Global argues that the parties agreed to subject themselves to COGSA in the instant action. According to Trans Global, its third-party complaint against Hanjin is subject to COGSA because it is

derivative of the underlying action between plaintiffs and itself, which arises out of a contract that incorporates the COGSA regime. *See* Mem. P. & A. in Support of Defs.' Mot. to Dismiss, Exhs. C–D (Mar. 15, 2004).

Assuming that the contract between Trans Global and plaintiffs' subrogors does in fact incorporate COGSA via its choice of law provision, the court nonetheless fails to discern any legal theory that allows Trans Global to extend this provision to govern the claims that it now seeks to advance against Hanjin. To the best that the court can determine, Trans Global asserts that it can bind Hanjin to the terms of the contract that it entered into with plaintiffs' subrogors pursuant to a theory of agency. However, this theory was rejected by the Ninth Circuit in *Kukje Hwajae*, 294 F.3d at 1171. There, the court expressed a relatively expansive view of the principal-agent relationship between a shipper and an NVOCC that has since been rejected by the Supreme Court's decision in *Norfolk Southern Railway Co. v. Kirby*, —— U.S. ——, ——, 125 S.Ct. 385, 398–99, 160 L.Ed.2d 283, 2004 WL 2514422, at *13 (2004). *See Kukje Hwajae*, 294 F.3d at 1176. The Ninth Circuit contrasted this shipper-NVOCC relationship to the NVOCC's more limited role vis-à-vis an ocean carrier, observing that:

> The relationship between ocean carrier and NVOCC is ... not one of agency, but is a contractual one embodied in the ocean carrier's bill of lading, under which the NVOCC is the shipper. The NVOCC does not contract with the with the owners of the goods as agent for the

ship. Quite the reverse, it contracts with the ocean carrier as agent for the owners of the goods.

*Id.* (original emphasis omitted).[4] Consistent with the Ninth Circuit's view, federal courts have consistently held that actions for indemnity between common carriers are not subject to COGSA unless there is an express reference to the statute in the bill of lading governing their contractual relationship. *See, e.g., Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 733 (5th Cir.1983) (en banc) (holding that COGSA's one-year limitations period is inapplicable "[w]here the relationship or contract between the party seeking indemnity and the one from whom indemnity is sought is not governed by an agreement subject to COGSA"); *ITT Rayonier, Inc. v. Southeastern Maritime Co.*, 620 F.2d 512, 514 (5th Cir.1980) (per curiam) (declining to apply COGSA statute of limitations where suit does "not arise through application of an agreement subject to COGSA"); *see also American Home Assur., Inc. v. Internaves Shipping Corp.*, 985 F.Supp. 1154, 1155–56 (S.D.Fla.1997) (collecting cases). Nothing in *Kirby* suggests that the Supreme Court intended to disturb this well-established precedent. Thus, the court must reject Trans Global's attempt to bring its claims against Hanjin within the COGSA regime by way of the asserted principal-agent relationship between the parties.

In summary, there is simply no support for the view that the third-party complaint is subject to COGSA by virtue of its relationship to plaintiffs' action against Trans Global. Moreover, it is undisputed that the bills of lading issued by Hanjin do not

---

4. The circumstances here differ somewhat from those described in *Kukje Hwajae* in that Hanjin acted as the time charterer rather than the operator of the Pennsylvania. Nonetheless, the Ninth Circuit's description of the relationship between an ocean carrier and an NVOCC is equally apposite to the charter-NVOCC relationship that arose between Hanjin and Trans Global. *See infra* at 764–65.

incorporate the COGSA regime except when required to do so by statute. *See* Zhi Decl, Exh. A at 2 ¶ 2. Accordingly, the court holds that Hanjin's bills of lading are not subject to COGSA and that Long Beach, California is not a proper venue for this action.

### D. *Ancillary Venue*

■■■ In a final attempt to avoid dismissal of its third-party complaint, Trans Global argues that the theory of ancillary venue allows the court to entertain its claims against Hanjin. The theory of ancillary venue posits that if venue is proper for the original action, an independent basis of venue for third-party claims is not required. *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F.Supp.2d 824, 828–29 (E.D.Va.2004). Thus, a defendant impleaded under Federal Rule of Civil Procedure 14(a) has no standing to raise the defense that venue in the original forum is improper. *Id.* However, third-party practice in admiralty actions is governed by Rule 14(c) rather than Rule 14(a). "Under 14(c), the third-party defendant can use any defenses available to it under Rule 12, including a motion to dismiss for improper venue, against either the plaintiff *or the defendant.*" *Galapagos Corporacion Turistica "Galatours" S.A. v. Panama Canal Comm'n* 171 F.Supp.2d 638, 642 n. 5 (E.D.La.2001) (emphasis added); *see also* Fed.R.Civ.P. 14(c). Thus, even if this forum is a proper venue for the principal action between plaintiffs and Trans Global, nothing prevents Hanjin from asserting any defenses it has against Trans Global, including a defense of improper venue based on the forum selection clause in Hanjin's bills of lading. The court therefore concludes that the doctrine of ancillary venue cannot be a basis for retaining jurisdiction over Trans Global's third-party complaint.

### E. *Conclusion*

■■■ Having rejected each of Trans Global's challenges to the enforceability of the forum selection clause in Hanjin's bills of lading, the court concludes that the clause is valid and enforceable. Accordingly, the court holds that venue in this district is improper under the terms of the contract of carriage between Hanjin and Trans Global and grants Hanjin's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).

### II. *Dismissal of Plaintiffs' Action Against Trans Global*

Because the court has concluded that Hanjin's motion to dismiss for improper venue must be granted, it now turns to the question of whether it is proper to retain jurisdiction over the principal action between plaintiffs and Trans Global. In its various motions before this court, Trans Global asserts two grounds for dismissing plaintiffs' action in its entirety. First, Trans Global argues that if it is bound by the forum selection clause in Hanjin's bills of lading, plaintiffs must also be bound, and therefore plaintiffs' complaint in the principal action must also be dismissed. In the alternative, Trans Global joins in Hanjin's motion to dismiss for forum non conveniens, arguing that dismissal of its third-party complaint warrants dismissing the entire action in favor of litigating in London, England. For their part, plaintiffs continue to assert that venue is proper under the forum selection clause in the bills of lading that Trans Global issued to their subrogors. Resp. to Pls.' Req. for Judicial Notice, Exh. A ¶ 21(a). The court considers each of these arguments below.

### A. *Improper Venue Under Hanjin's Bills of Lading*

In its motion for summary judgment, Trans Global argues that its agency rela-

tionship with plaintiffs' subrogors precludes plaintiffs from litigating their claims in this court. After the parties completed their briefing on this issue, the Supreme Court issued its opinion in *Norfolk Southern Railway Co. v. Kirby,* —— U.S. ——, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). Applying federal maritime law to a contract for the carriage of goods from Australia to Huntsville, Alabama, the Court held that "intermediaries, entrusted with goods, are 'agents' [of the shipper] only in their ability to contract for liability limitations with carriers downstream." *Id.* at 398–99. In so holding, the Court sharply limited the general principles of agency law that had previously governed the relationship between an NVOCC and a shipper in the Ninth Circuit. *See, e.g., Kukje Hwajae,* 294 F.3d at 1175–77. Thus, it is doubtful that the pre-*Kirby* cases that Trans Global cites in support of its attempt to enforce the forum selection clause in Hanjin's bills of lading against plaintiffs remain good law.

▬▬ Whatever effect *Kirby* might have on a court's ability to enforce forum selection clauses in the absence of a contractual relationship between the parties, this court need not confront the issue in the instant action because Trans Global waived any right that it might have had to avail itself to the benefit of Hanjin's forum selection clause. There is no dispute that Trans Global failed to challenge plaintiffs' choice of venue in a responsive pleading or in a pre-answer motion made pursuant to Federal Rule of Civil Procedure 12. Mem. P. & A. in Support of Defs.' Mar. 15, 2004 Mot. to Dismiss; *see generally* Defs.' Answer. Under Rule 12(h) of the Federal Rules of Civil Procedure, a defense of improper venue is waived unless it is included in the defendant's first Rule 12 motion or, if no such motion is filed, in the answer to the complaint. Fed. R. Civ. Pro. 12(h).

This principle applies to motions to dismiss for improper venue based on contractual forum selection clauses as well as on statutory venue issues. *Sharpe v. Jefferson Distrib. Co.,* 148 F.3d 676, 679–80 (7th Cir.1998), *abrogated on other grounds by Papa v. Katy Indus., Inc.,* 166 F.3d 937 (7th Cir.1999). Here, Trans Global neither moved to dismiss for improper venue when it filed its initial Rule 12(b) motion on March 15, 2004 nor included the affirmative defense of improper venue in its answer to plaintiffs' complaint. By neglecting to do so, Trans Global waived any defense that it might have had based on the forum selection clause in Hanjin's bills of lading. The court therefore denies Trans Global's motion for summary judgment that venue is improper.

### B. *Forum Non Conveniens*

Alternatively, both Hanjin and Trans Global seek dismissal on forum non conveniens grounds, arguing that London, England is a more convenient venue for this action. Having concluded that Trans Global's third-party complaint must be dismissed pursuant to the forum selection clause in Hanjin's bills of lading, the court need only consider whether it is proper to retain jurisdiction over the principal action between plaintiffs and Trans Global.

#### 1. *Plaintiffs' Waiver Argument*

▬▬ As with the improper venue defense, plaintiffs argue that Trans Global waived the defense of forum non conveniens by failing to include the defense in either its initial Rule 12 motion or its answer to plaintiffs' complaint. However, a motion to dismiss based on forum non conveniens is not a motion to dismiss for improper venue. Under the doctrine of forum non conveniens, a court has the discretion to dismiss a case "even if jurisdiction and proper venue are established."

*American Dredging Co.*, 510 U.S. at 448, 114 S.Ct. 981; *Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*, No. C 01–4203 MMC, 2003 WL 22682483, at *3 (N.D.Cal. Nov. 10, 2003). Indeed, for the doctrine to apply, venue must already be proper under the federal venue statutes. *American Dredging Co.*, 510 U.S. at 448–49, 114 S.Ct. 981; *Timberlane Lumber Co. v. Bank of Am. Natl'l Trust & Savs. Ass'n*, 549 F.2d 597, 616 (9th Cir.1976) (noting that in applying doctrine of forum non conveniens, proper venue is assumed). Consequently, a motion to dismiss on forum non conveniens grounds is not a motion to dismiss for improper venue under Rule 12(b)(3) and is therefore not subject to waiver under Rule 12(h). *Chateau Des Charmes Wines*, 2003 WL 22682483, at *3. Accordingly, the court may consider on the merits the question of whether England is a more convenient forum for litigating this action.

### 2. *Adequate Alternative Forum*

██ Moving to the merits of defendants' motion to dismiss for forum non conveniens, the first step of the court's analysis asks whether England is an adequate alternative forum for adjudicating plaintiffs' claims. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied, Lui Su Nai–Chao v. Boeing Co.*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). An alternate forum will be considered adequate if: (1) the defendants are subject to service of process or consent to be sued in that jurisdiction; and (2) the forum permits a satisfactory remedy. *See Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. Here, Hanjin has represented that it is subject to service of process in England and has consented to suit in the English forum. Hanjin's Mot. to Dismiss at 20. In addition, Trans Global has indicated that it would consent to jurisdiction in England on the condition that all claims in

the instant action are dismissed. Trans Global's Opp. to Mot. to Dismiss at 17. Thus, plaintiffs may pursue their claims against all defendants in England.

██ Furthermore, there is no serious dispute that the English forum provides plaintiffs with a satisfactory remedy. As Hanjin points out, claims representing approximately seventy percent of the known cargo damage that resulted from the fire aboard the Pennsylvania are currently pending in the High Court of Justice, Queen's Bench Division of the Admiralty Court in London. Hoyes Decl. ¶¶ 2, 7. The High Court of Justice will interpret the same choice of law provision in Hanjin's bills of lading that this court would consider in determining the rights and liability of the parties under the Hague Rules. *See* Zhi Decl., Exh. A at 2 ¶ 2. Indeed, this court has every reason to believe that a specialized admiralty court adjudicating a consolidated proceeding involving at least seventeen claimants will equal or surpass its own competence in applying the rules of the Hague Convention to the parties' dispute. *See* Hoyes Decl. ¶¶ 10–11 (testifying to experience of English judges in admiralty law and adequacy of discovery procedures in English courts); *see also FESA UK Ltd. v. M/V ARKTIS SUN*, No. 01–CIV 2940(SHS), 2002 WL 31413894, at *2 (S.D.N.Y. Mar. 26, 2002) (holding that English courts provide adequate forum for interpreting Hague Rules). Thus, the court concludes that the High Court of Justice in London is an adequate alternative forum for litigating plaintiffs' claims.

### 3. *Private and Public Interest Factors*

Having found the English forum to be adequate, the court must balance the "private interest" and "public interest" factors that weigh for and against dismissal of plaintiffs' complaint. *See Gilbert*, 330 U.S.

at 508–09, 67 S.Ct. 839. Among the private interest factors, the availability of witnesses and ease of access to evidence weigh heavily in favor of dismissing the instant action. Hanjin has submitted uncontroverted evidence that the English court will assemble documentary evidence and take testimony from both percipient and expert witnesses for the purpose of ascertaining the cause of the fire aboard the Pennsylvania. Hoyes Decl. ¶ 10. These proceedings are likely to duplicate much of the evidence that would be required to resolve disputed factual issues in the action pending before this court, including the questions of whether defendants received the allegedly damaged goods, whether the goods were delivered to their respective destinations, and whether defendants exercised due diligence to ensure the vessel was seaworthy. Joint Case Management Conference Statement, Attachment B at 2 (Statement of Disputed Factual Issues). Avoiding such duplicative proceedings is precisely the sort of "practical problem" in the adjudication of a case that the doctrine of forum non conveniens is designed to avoid. *See Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. Thus, the private interest factors strongly favor dismissing plaintiffs' complaint.

*Gilbert's* "public interest" factors also weigh in favor of dismissal. *See id.* at 508–09, 67 S.Ct. 839. Primary among these factors is the lack of any relationship between the events giving rise to instant action and the forum in which it was brought. *See id.* As noted above, plaintiffs' claims arise out of a shipment of goods from Shanghai, China to two destinations in Europe; the fire that allegedly destroyed the property of plaintiffs' subrogors occurred off the coast of Sri Lanka. These events have no relationship whatsoever to this district, the State of California, or the United States. Admittedly, the choice of forum to legate this dispute will

inevitably be somewhat arbitrary, given that China, Sri Lanka, the United Kingdom, and the Netherlands all bear some logical connection to the proceedings. However, at least some of the goods aboard the Pennsylvania were being shipped to England, the forum in which the majority of cargo owners have sought to litigate their claims. In contrast, the jurisdiction in which this court sits lacks any connection whatsoever to the locations where the events that gave rise to this dispute occurred. Furthermore, even under the best circumstances, this court will struggle to match the competence that its English counterpart will doubtlessly exhibit in applying the rules of the Hague Convention. Thus, the public's interest in trying this action in a forum familiar with the applicable law also weighs in favor of dismissal. *See Rosa*, 211 F.3d at 512. The court therefore concludes that *Gilbert's* public interest factors favor dismissing plaintiffs' complaint.

■ In seeking to avoid dismissal on forum non conveniens grounds, plaintiffs rely primarily on the forum selection clause of Trans Global's bills of lading. The bills of lading that Trans Global issued to plaintiffs' subrogors provide that any dispute arising under arising under the contracts between the shippers and Trans Global "shall be governed by the laws of California ... and shall be brought before California Courts unless carrier otherwise agrees in writing." Resp. to Pls.' Req. for Judicial Notice, Exh. A ¶ 21(a). The court assumes for the purposes of deciding this motion that Trans Global's forum selection clause is mandatory rather than permissive and thus would weigh heavily in favor of retaining jurisdiction over this action if plaintiffs could also pursue their claims

against Hanjin in this jurisdiction.[5] However, even a mandatory forum selection clause does not necessarily give rise to a conclusive presumption that this court is a convenient forum for litigating plaintiffs' claims. As the First Circuit held in *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45 (1st Cir.1990), the presence of a forum selection provision in a contract—even a mandatory one—is "simply one of the factors that should be considered and balanced" in the ordinary forum non conveniens analysis. *Id.* at 51. Admittedly, there is authority to the contrary outside the Ninth Circuit. *See, e.g., AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir.2001) (concluding that *Bremen's* "unreasonable and unjust" standard should apply to analysis of forum non conveniens motion where parties entered into contract designating the district court as proper venue pursuant to a mandatory forum selection clause), *cert. denied, Vacances Heliades S.A. v. AAR Int'l, Inc.*, 534 U.S. 995, 122 S.Ct. 463, 151 L.Ed.2d 380 (2001). However, even conceding that the First Circuit view is the minority position, none of the contrary authorities involved an action where enforcing the forum selection clause would potentially impair the rights of a third party who is not bound by the contract. Indeed, the Seventh Circuit has noted that "the only good reason for treating a forum selection clause differently from any other contract is the possibility of adverse effects on third parties." *Id.* at 525 n. 9

(quoting *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990)) (alterations in original omitted). In this action, Hanjin's liability to Trans Global is entirely dependent on the outcome of plaintiffs' claims against Trans Global. In recognition of this fact, plaintiffs elected to join Hanjin as a defendant rather than contest the merits of the motion to dismiss for failure to join an indispensable party that Trans Global filed on March 15, 2004. By failing to oppose Hanjin's motion to dismiss, plaintiffs have now implicitly conceded that this forum is not a proper venue to litigate their claims against all of the parties. The fact that plaintiffs have reversed their earlier decision to join Hanjin as a defendant and now seek to pursue their claims against Trans Global in this forum without Hanjin's participation in the litigation may be entitled to some weight in the forum non conveniens analysis, but ultimately this consideration is not sufficient to tip a balance that is otherwise heavily weighted in favor of dismissing plaintiffs' complaint.

■ In summary, the court concludes that the High Court of Justice, Queen's Bench Division of the Admiralty Court in London, England is an adequate forum for litigating the parties' dispute. The court also finds that *Gilbert's* private interest and public interest factors support dismissal of plaintiffs' complaint. Thus, the court concludes that plaintiffs' complaint should be dismissed on forum non conveniens grounds. Having already concluded

5. However, it should be noted that Trans Global's bills of lading include an express provision authorizing Trans Global "to arrange for any ocean carriage required under [these] Bill[s] of Lading to be performed by any ocean carrier on the terms and conditions of the regular form of Bill of Lading in use by such ocean carrier." Resp. to Pls.' Req. for Judicial Notice, Exh. A ¶ 5. Although it is not necessary for the court to determine the precise relationship between this provision and the parties' expressed desire to litigate disputes arising under the bills of lading in California, the fact that plaintiffs' subrogors consented to be bound to the terms of *any* ocean carrier's bills of lading is one factor that the court may consider in a forum non conveniens analysis as weighing in favor of litigating plaintiffs' claims in London.

that Trans Global's third-party complaint must be dismissed for improper venue, the court therefore holds that this action must be dismissed in its entirety.

*CONCLUSION*

For the foregoing reasons, the court GRANTS Hanjin's motion to dismiss Trans Global's third-party complaint. Trans Global's motion for summary judgment is DENIED. Plaintiffs' first amended complaint is DISMISSED on the ground of forum non conveniens.[6] Trans Global's motion for leave to amend its answer and third-party complaint is DENIED as moot.

IT IS SO ORDERED.

6. Plaintiffs may seek leave to file an amended complaint against Trans Global in the event that Trans Global fails to consent to personal jurisdiction in the High Court of Justice in London, England.