294 F.3d 1171
 KUKJE HWAJAE INSURANCE CO., LTD., a corporation, Plaintiff-Appellant/Cross-Appellee,
v.
The "M/V HYUNDAI LIBERTY," her Engines, Boilers, Tackle, etc., in rem, Defendant-Appellee/Cross-Appellant, and
Glory Express, Inc., a business entity, in personam, Defendant-Appellee,
Glory Express, Inc., a California Corporation, Third-Party Plaintiff-Appellee,
v.
Streamline Shippers Association, a California Corporation, Third-Party Defendant, and
Hyundai Merchant Marine Co., Ltd., a business entity, Does 1-10 inclusive, Third-Party Defendants-Appellees.
 No. 00-56970.
 No. 00-57049.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 13, 2002.
 Filed June 26, 2002.
 
 Michael W. Lodwick, Haight Brown & Bonesteel LLP, Santa Ana, CA, for plaintiff-appellant/cross-appellee.
 Christina L. Owen and Robert E. Coppola, Cogswell Nakazawa & Chang, Long Beach, CA, for defendant-appellee/cross-appellant.
 Simon H. Langer, Beverly Hills, CA, for defendant/third-party plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California, Audrey B. Collins, District Judge, Presiding. D.C. No. CV-98-09217-ABC.
 Before BEEZER, TASHIMA, and GRABER, Circuit Judges.
 OPINION
 GRABER, Circuit Judge.
 
 
 1
 This case requires us to answer two questions: (1) whether the owner of cargo, who contracted with an intermediary non-vessel operating common carrier (NVOCC) to arrange for the carriage of cargo on a ship, was bound by the forum-selection clause in the bill of lading issued by the ship's owner to the NVOCC, and (2) whether the NVOCC was entitled to take advantage of a statutory limitation of liability by having given the cargo's owner a "fair opportunity" to opt for higher limits by paying a greater charge. We hold that the cargo's owner was bound by the forum-selection clause and that the statutory limitation of liability applies. Accordingly, we affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Plaintiff Kukje Hwajae Insurance Company is the subrogated insurer of the Doosan Corporation, a Korean manufacturer of machinery. Doosan contracted with Glory Express, Inc., an NVOCC, to ship a "Doosan Brand Vertical Twin Spindle CNC Lathe" from Busan, Korea, to Los Angeles, California, on the vessel the Hyundai Liberty. Glory Express issued three bills of lading to cover the shipment. Each one identifies Doosan as the shipper and the "Hyundai Liberty" as the "Exporting Carrier." The Glory Express bills of lading contain a forum-selection clause requiring that all suits relating to the carriage of goods covered by the bills of lading be brought in the federal courts in New York, although Glory Express has not sought to enforce that clause here.
 
 
 3
 Glory Express, in turn, contracted with Hyundai Merchant Marine Company to ship the lathe on its vessel, the Hyundai Liberty. It did so by acting through Streamline Shippers Association, a nonprofit organization of shippers (Streamline).[1] Hyundai Merchant Marine issued a bill of lading identifying Streamline as the shipper. That bill of lading provided:
 
 
 4
 The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except otherwise provided in this Bill of Lading. Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or other wise shall be brought before the Seoul Civil District Court in Korea.
 
 
 5
 (Emphasis added.)
 
 
 6
 According to Plaintiff's complaint, the lathe was damaged during the course of the sea voyage, resulting in more than $200,000 in damages. Plaintiff paid Doosan's claim and then initiated this action. The complaint asserted claims for damage to cargo, breach of contract, negligence, breach of duty to care for property in bailment, and unseaworthiness. Plaintiff brought the action in personam against Defendant Glory Express and in rem against the Hyundai Liberty (Hyundai).[2]
 
 
 7
 Hyundai moved to dismiss Plaintiff's complaint as to the vessel, seeking to enforce the forum-selection clause in its bill of lading. The district court denied the motion, in part because it found that Hyundai had not properly authenticated the copy of the bill of lading that it had attached to its motion.[3] Additionally, the court denied the motion because Plaintiff's subrogor, Doosan, had not "accepted" the bill of lading and it was, therefore, not enforceable against Plaintiff. The court stated further that, if Plaintiff "accepted" the bill during the litigation by relying on it to establish an element of one of its claims, the court would entertain again Hyundai's motion to enforce the forum-selection clause.
 
 
 8
 Hyundai filed a motion for partial summary judgment on the ground that the Carriage of Goods by Sea Act (COGSA) — specifically 46 U.S.C. app. § 1304(5) — limited the ship's in rem liability. Over Plaintiff's opposition, the court granted the motion.
 
 
 9
 Plaintiff then moved for summary judgment against Glory Express. The court granted the motion in part, holding that Glory Express was liable to Plaintiff for damage to the lathe, but that its liability was limited by the terms of the Glory Express bills of lading and by COGSA. At that time, the court did not calculate the total amount of damages for which Glory Express was liable, because Plaintiff had not established how many "packages" had been shipped for purposes of COGSA. Glory Express then moved for summary judgment on the ground that the total number of packages shipped was six. The court granted the motion.
 
 
 10
 Plaintiff and Hyundai filed cross-motions for summary judgment on the issue of the vessel's in rem liability. Each party opposed the other's motion. The court denied both parties' motions and, instead, dismissed the case. The court reasoned that Plaintiff's use of a part of the Hyundai bill of lading to establish that the goods were delivered on board the Hyundai Liberty in good condition constituted "acceptance" of the bill of lading. The court also held that "any claim that Kukje has against the Hyundai Liberty must be brought pursuant to the Hyundai's Bills of Lading." The court dismissed the action with respect to the Hyundai "without prejudice to Plaintiff's right to bring a claim that complies with the forum selection clause of the Hyundai's Bills of Lading."
 
 
 11
 Plaintiff and Hyundai timely appealed.
 
 STANDARDS OF REVIEW
 
 12
 We review for abuse of discretion the district court's decision whether to enforce a forum-selection clause. Fireman's Fund Ins. Co. v. M.V. DSR Atl., 131 F.3d 1336, 1338 (9th Cir.1997). A motion to enforce a forum-selection clause is treated as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3). Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir.1996). Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered. Id.
 
 
 13
 We review de novo the district court's grant of summary judgment. Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc).
 
 DISCUSSION
 
 14
 A. Whether Plaintiff is bound by the forum-selection clause in the Hyundai bill of lading.
 
 
 15
 Plaintiff argues that the district court erred by dismissing the in rem action because of the forum-selection clause. Plaintiff contends that the clause does not bind it because Plaintiff's subrogor, Doosan, never accepted the Hyundai bill of lading and, therefore, is not a party to the contract. Plaintiff argues that its evidentiary use of the bill of lading did not operate as "acceptance" of the contractual terms of the bill. Because Plaintiff does not seek to enforce the contractual terms of the bill of lading, but has brought a tort claim for cargo damage, and because neither Plaintiff nor its subrogor is a party to the bill of lading, Plaintiff reasons that the forum-selection clause is not enforceable against it.
 
 
 16
 Hyundai, by contrast, argues that the court erred by not enforcing the forum-selection clause at the outset of the litigation. Hyundai asserts that the clause is enforceable against Plaintiff because Plaintiff's subrogor is a party to the bill of lading or, in the alternative, is so "closely related" to the transaction that the clause is enforceable. We agree with Hyundai that the in rem action should have been dismissed at the outset for want of jurisdiction.
 
 
 17
 As an initial matter, it is clear that Plaintiff's in rem action for cargo damage, characterized by Plaintiff as a tort,[4] is within the scope of the forum-selection clause. The text of the clause provides: "Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea." Plaintiff's action concerns damage to the lathe that occurred during "carriage under this Bill of Lading" on board the Hyundai Liberty.
 
 
 18
 It also is clear that enforcement of the clause does not contravene COGSA. In Fireman's Fund, we approved a similar forum-selection clause requiring that a claim for cargo damage be brought in Korea. 131 F.3d at 1338-40. In that case, the plaintiff (the consignee of the cargo covered by the bill of lading at issue) brought claims for cargo damage in both an in rem action against the vessel and an in personam action against the vessel's charterer. Id. at 1339. We rejected the plaintiff's argument, which posited that COGSA barred enforcement of the forum-selection clause because in rem proceedings are not available under Korean law, and we held that the district court abused its discretion when it declined to enforce the clause. Id. at 1338-40. We remanded the case to district court to dismiss the in rem and in personam proceedings for "want of jurisdiction." Id. at 1340.
 
 
 19
 Therefore, we can, consistent with both precedent and the terms of the bill of lading, apply the Korean forum-selection clause to Plaintiff's in rem action. The question is whether the clause can be enforced against Plaintiff. We conclude that it can. That is because the commercial role of an NVOCC, as well as the facts of this case, lead to the conclusion that Glory Express was acting as Doosan's agent when it accepted the Hyundai bill of lading. As a result, Doosan — and thus Plaintiff, as Doosan's subrogee — are bound by the forum-selection clause in the Hyundai bill of lading.
 
 
 20
 As defined by federal statute, an NVOCC is "a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 U.S.C. app. § 1702(17)(B). Both commentators and courts have recognized that an NVOCC generally acts as the agent of the cargo owner/shipper when it contracts with the ocean carrier to ship the cargo owner's goods.
 
 
 21
 A non-vessel operating common carrier, or NVOCC, contracts with its customers as principal, agreeing to transport their goods on a voyage that includes an ocean leg. An NVOCC commonly issues bills of lading to its customers in its own name, even though it does not operate the ship that will carry the goods on the ocean voyage. It buys space on the carrying ship like any other customer, receiving a bill of lading from the owner or charterer of that ship when the goods are loaded on board. It commonly consolidates goods from several different shippers into a single container, receiving a bill of lading from the ocean carrier in relation to the container as a whole. The NVOCC is not authorized by the owner or master of the carrying ship to issue bills of lading that will bind the ship; indeed, the ocean carrier may have no idea that the party to whom it issues its bill is in fact an NVOCC that has issued bills of lading itself. The relationship between ocean carrier and NVOCC is therefore not one of agency, but is a contractual one embodied in the ocean carrier's bill of lading, under which the NVOCC is the shipper. The NVOCC does not contract with the owners of the goods as agent for the ship. Quite the reverse, it contracts with the ocean carrier as agent for the owners of the goods.
 
 
 22
 Martin Davies, In Defense of Unpopular Virtues: Personification and Ratification, 75 Tul. L.Rev. 337, 395-96 (2000) (footnote citations omitted) (emphasis added); see also Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 937 n. 2 (11th Cir. 1990) ("[The cargo owner] may treat [the NVOCC] as a common carrier for purposes of COGSA, but underlying carriers... treat [the NVOCC] as [the cargo owner's] agent." (emphasis added)); Ins. Co. of N. Am. v. S/S Am. Argosy, 732 F.2d 299, 301 (2d Cir.1984) ("With respect to the vessel and her owner, however, the NVOCC is an agent of the shipper...."); Orion Ins. Co. v. M/V "Humacao", 851 F.Supp. 575, 577-78 & 577 n. 4 (S.D.N.Y. 1994) (concluding that an NVOCC acts as the agent of the cargo owner when it agrees to the terms of the bill of lading issued by the vessel's owner).
 
 
 23
 Nothing in the record suggests that the relationship between Doosan and Glory Express deviated from that commercial norm. To the contrary, the record shows that Doosan intended Glory Express to act as its agent for the purpose of shipping the lathe.[5] The bills expressly provide that Doosan and Glory Express agree that Glory Express will arrange for the carriage of the lathe on board the Hyundai Liberty. Moreover, by the terms of the bills, Glory Express had authority to use whatever form of transportation it thought was necessary to transport the goods: "The Carrier shall have the right at its sole discretion to use feederships, ferries, lighters, trucks, trains or planes, in addition to the Ocean Vessel or its substitute to accomplish said carriage." Cf. Morrow Crane Co. v. Affiliated FM Ins. Co., 885 F.2d 612, 613 (9th Cir.1989) (concluding that the independent freight forwarder with whom the cargo owner contracted to arrange for the shipping of a crane was cargo owner's agent vis-# 2A#-vis the vessel's operator).
 
 
 24
 Glory Express thus had both the express duty and the express authority to ship the lathe on the Hyundai Liberty and to do, within reason, whatever it needed to do in order to fulfill that obligation. Accepting the Hyundai bill of lading was a necessary — and reasonable — step for Glory Express to fulfill its obligation to Doosan. Therefore, Doosan and Plaintiff are bound by Glory Express' acceptance of the Hyundai bill of lading. Lux Art Van Serv., Inc. v. Pollard, 344 F.2d 883, 887 (9th Cir.1965) ("`A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorized him to do, but also whatever usually belong to the doing of it or is necessary to its performance.'" (quoting Law v. Stokes, 32 N.J.L. 249, 90 Am. Dec. 655, 656-57 (N.J.1867))).
 
 
 25
 In short, because an NVOCC is considered, in general, to act as an agent for the cargo's owner when it contracts for carriage on a vessel, and because in this case Glory Express, consistent with that commercial norm, was acting as Doosan's agent when it accepted the Hyundai bill of lading, Plaintiff is bound by that bill. Consequently, the district court abused its discretion when it failed to enforce the forum-selection clause at the outset of the litigation on the ground that Doosan had not accepted the Hyundai bill of lading. Nonetheless, we affirm. The district court properly dismissed Plaintiff's in rem action against the Hyundai Liberty (albeit for the wrong reason).[6]
 
 
 26
 B. Whether the liability limitations contained in the Glory Express bills of lading meet the COGSA "fair opportunity requirement."
 
 
 27
 In some instances, 46 U.S.C. app. § 1304(5) limits a carrier's potential liability for loss or damage related to the carriage of goods. It provides in pertinent part:
 
 
 28
 Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.
 
 
 29
 Previously, we have identified the circumstances under which a carrier is entitled to the benefit of that limitation of liability:
 
 
 30
 A carrier may limit its liability under COGSA only if the shipper is given a "fair opportunity" to opt for a higher liability by paying a correspondingly greater charge. The carrier has the initial burden of producing prima facie evidence showing that it provided notice to the shipper that it could pay a higher rate and opt for higher liability. The carrier satisfies this initial burden by legibly reciting the terms of 46 U.S.C.App. § 1304(5) or language to the same effect in the bill of lading. The burden then shifts to the shipper to prove it was denied such an opportunity.
 
 
 31
 Vision Air Flight Serv., Inc. v. M/V Nat'l Pride, 155 F.3d 1165, 1168-69 (9th Cir. 1998) (citations and internal quotation marks omitted).
 
 
 32
 Plaintiff does not contest the applicability of COGSA to the Glory Express bills of lading. It argues, instead, that Glory Express cannot avail itself of the COGSA limitations on liability because the Glory Express bills do not comply with the "fair opportunity" requirement.
 
 
 33
 The Glory Express bills of lading contain the following provision:
 
 
 34
 In case of any loss or damage to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States per package, or in case of goods not shipped in package, per shipping unit, the value of the goods shall be deemed to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing by the Shipper upon delivery to the Carrier and inserted in this bill of lading and extra charge paid. In such case, if the actual value of the goods per package or per shipping unit shall exceed such declared value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value. The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except goods shipped in bulk, and irrespective of weight or measurement unit employed in calculating freight charges.
 
 
 35
 (Emphasis added.)
 
 
 36
 That provision meets the requirements of COGSA. Its text tracks that of 46 U.S.C. app. § 1304(5). The above-quoted passage explicitly limits Glory Express' liability and informs the shipper — in this case, Doosan — that it can opt for higher liability by declaring the value of the goods and paying an extra charge. See Vision Air, 155 F.3d at 1169 (approving a similar provision).
 
 
 37
 Plaintiff argues that the provision's reference to "shipping unit" invalidates the clause, because it does not echo the statutory phrase "customary freight unit" and therefore operates to reduce Glory Express' liability below the level permitted by COGSA. We rejected an identical argument in Vision Air, 155 F.3d at 1169-70. There, the plaintiff argued that the carrier's attempt to limit liability to $500 per "container," as distinct from "package" or "customary freight unit," invalidated the liability limitation. We disagreed:
 
 
 38
 When faced with a carrier's attempt to reduce liability through enterprising definitions of "package," other courts have simply redefined "package" or "customary freight unit" according to the dictates of COGSA. Other courts have not, as [the plaintiff] urges this court to do, held the limitation of liability provision void altogether.
 
 
 39
 Whether or not the bill of lading "mislabeled" or "misbundled" freight units, it nonetheless gave [the plaintiff] notice that [the carrier]'s liability was limited, and invited [the plaintiff] to opt for a higher liability by paying a correspondingly greater freight charge. This is all COGSA requires.
 
 
 40
 Id. at 1170 (citations omitted).
 
 
 41
 Under the standard articulated in Vision Air, Glory Express established a prima facie case of compliance with the "fair opportunity" requirement. Because Plaintiff argues only that Glory Express failed to establish its prima facie case, and does not attempt to show that Doosan actually was denied the opportunity to declare a higher value, we affirm the district court's holding that the Glory Express bills of lading comply with the "fair opportunity" requirement of COGSA.
 
 CONCLUSION
 
 42
 With respect to the in rem action: The forum-selection clause in the Hyundai bill of lading is enforceable against Plaintiff. As a result, the district court lacked jurisdiction over Plaintiff's in rem action against the Hyundai Liberty and properly dismissed that action.
 
 
 43
 With respect to the in personam action: The Glory Express bills of lading comply with the COGSA "fair opportunity" requirement. Therefore, Glory Express is entitled to the limitations on liability provided in 46 U.S.C. app. § 1304(5), and the district court properly granted summary judgment.
 
 
 44
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Streamline acted as the agent of Glory Express; for the practical purpose of this appeal, they are indistinguishable
 
 
 [2]
 Pursuant to Federal Rule of Civil Procedure C(6)(Supplemental Rules for Certain Admiralty and Maritime Claims), the Hyundai Liberty is represented in this action by its owner, Hyundai Merchant Marine Company
 
 
 [3]
 That defect was cured at a later date, and neither party argues that the initial lack of authentication has any bearing on our resolution of the legal issues presented here
 
 
 [4]
 But see Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co., 215 F.3d 1217, 1220-21 (11th Cir.2000) (holding that, when COGSA applies, it provides the exclusive remedy for cargo damage claims, which are "hybrid" contract-and-tort claims).
 
 
 [5]
 By recognizing that Glory Express acted as Doosan's agent when it accepted the Hyundai bill of lading, we do not mean to suggest that the relationship between Glory Express and Doosan was one of agent and principal for all purposes. It is clear from the Glory Express bills of lading, for example, that the parties intended that Glory Express would be independently liable, to some extent, for loss or damage to the lathe that occurred during shippingSee, e.g., Harold Gill Reuschlein & William A. Gregory, The Law of Agency and Partnership § 7 (2d ed.1990) (distinguishing between general agents and special agents; the latter is authorized to conduct a single transaction or series of transactions not involving continuity of service).
 
 
 [6]
 Because the action should have been dismissed at the outset for want of jurisdiction, we do not reach the question whether the COGSA limitations of liability apply to Plaintiff's action against the Hyundai Liberty