**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KUKJE HWAJAE INSURANCE CO.,
LTD., a corporation,
         *Plaintiff-Appellant-*
                *Cross-Appellee,*

v.

The "M/V HYUNDAI LIBERTY," her
Engines, Boilers, Tackle, etc., in
rem,
         *Defendant-Appellee-*
                *Cross-Appellant,*

         and

GLORY EXPRESS, INC., a business
entity, in personam,
         *Defendant-Appellee.*

Nos. 00-56970
        00-57049

D.C. No.
CV-98-09217-ABC

OPINION

GLORY EXPRESS, INC., a California
Corporation,
         *Third-party plaintiff-*
                *Appellee,*

v.

STREAMLINE SHIPPERS ASSOCIATION,
a California Corporation,
         *Third-party defendant,*

         and

5787

HYUNDAI MERCHANT MARINE CO., LTD., a business entity, DOES 1-10 inclusive,

*Third-party defendants-Appellees.*

On Remand from the United States Supreme Court

Filed May 26, 2005

Before: Robert R. Beezer, A. Wallace Tashima, and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Michael W. Lodwick, Haight Brown & Bonesteel LLP, Santa Ana, California, for the plaintiff-appellant/cross-appellee.

Christina L. Owen and Robert E. Coppola, Cogswell Nakazawa & Chang, Long Beach, California, for the defendant-appellee/cross-appellant.

Simon H. Langer, Beverly Hills, California, for the defendant/third-party plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

This case is before us for a second time.[1] In our previous opinion, *Kukje Hwajae Insurance Co. v. The M/V Hyundai Liberty*, 294 F.3d 1171, 1179 (9th Cir. 2002), we held:

> With respect to the in rem action: The forum-selection clause in the Hyundai bill of lading is enforceable against Plaintiff. As a result, the district court lacked jurisdiction over Plaintiff's in rem action against the Hyundai Liberty and properly dismissed that action.

> With respect to the in personam action: The Glory Express bills of lading comply with the [Carriage of Goods by Sea Act] COGSA "fair opportunity" requirement. Therefore, Glory Express is entitled to the limitations on liability provided in 46 U.S.C. app. § 1304(5), and the district court properly granted summary judgment.

Thereafter, the Supreme Court of the United States entered this order: "Petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. ___, 125 S. Ct. 385 (2004)." *Green Fire & Marine Ins. Co. v. M/V Hyundai Liberty*, 125 S. Ct. 494 (2004).[2] In particular, the Supreme Court criticized our "agency" analysis with

---

[1]The mandate is hereby recalled for purposes of disposition. Subsequent petitions for rehearing and petitions for rehearing en banc may be filed.

[2]Green Fire and Marine Insurance Company was formerly known as Kukje Hwajae Insurance Company. For the sake of consistency, we will continue to refer to the parties by the names that they used when they filed their initial briefs in this court.

respect to the forum-selection clause. *Norfolk Southern*, 125 S. Ct. at 398-99. As subsequent briefing has clarified, however, there is a completely separate, preserved, and properly argued route by which we reach the same answer to the first question, that is, the binding effect of the forum-selection clause. The second issue is not affected by the Supreme Court's decision in *Norfolk Southern*. We again affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kukje Hwajae Insurance Company is the subrogated insurer of the Doosan Corporation, a Korean manufacturer of machinery. Doosan contracted with Glory Express, Inc., a non-vessel operating common carrier, to ship a "Doosan Brand Vertical Twin Spindle CNC Lathe" from Busan, Korea, to Los Angeles, California, on the vessel the Hyundai Liberty. Glory Express issued three bills of lading to cover the shipment. Each one identifies Doosan as the shipper and the "Hyundai Liberty" as the "Exporting Carrier." The Glory Express bills of lading contain a forum-selection clause requiring that all suits relating to the carriage of goods covered by the bills of lading be brought in the federal courts in New York, although Glory Express has not sought to enforce that clause here.

Glory Express, in turn, contracted with Hyundai Merchant Marine Company to ship the lathe on its vessel, the Hyundai Liberty. It did so by acting through Streamline Shippers Association, a nonprofit organization of shippers (Streamline).[3] Hyundai Merchant Marine issued a bill of lading identifying Streamline as the shipper. That bill of lading provided:

> The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except otherwise pro-

---

[3]Streamline acted as the agent of Glory Express; for the practical purpose of this appeal, they are indistinguishable.

vided in this Bill of Lading. *Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.*

(Emphasis added.)

According to Plaintiff's complaint, the lathe was damaged during the course of the sea voyage, resulting in more than $200,000 in damages. Plaintiff paid Doosan's claim and then initiated this action. The complaint asserted claims for damage to cargo, breach of contract, negligence, breach of duty to care for property in bailment, and unseaworthiness. Plaintiff brought the action in personam against Defendant Glory Express and in rem against the Hyundai Liberty (Hyundai).[4]

Hyundai moved to dismiss Plaintiff's complaint as to the vessel, seeking to enforce the forum-selection clause in its bill of lading. The district court denied the motion, in part because it found that Hyundai had not properly authenticated the copy of the bill of lading that it had attached to its motion.[5] Additionally, the court denied the motion because Plaintiff's subrogor, Doosan, had not "accepted" the bill of lading and it was, therefore, not enforceable against Plaintiff. The court stated further that, if Plaintiff "accepted" the bill during the litigation by relying on it to establish an element of one of its claims, the court would entertain again Hyundai's motion to enforce the forum-selection clause.

Hyundai filed a motion for partial summary judgment on

---

[4]Pursuant to Federal Rule of Civil Procedure C(6) (Supplemental Rules for Certain Admiralty and Maritime Claims), the Hyundai Liberty is represented in this action by its owner, Hyundai Merchant Marine Company.

[5]That defect was cured at a later date, and neither party argues that the initial lack of authentication has any bearing on our resolution of the legal issues presented here.

the ground that the COGSA—specifically 46 U.S.C. app. § 1304(5)—limited the ship's in rem liability. Over Plaintiff's opposition, the court granted the motion.

Plaintiff then moved for summary judgment against Glory Express. The court granted the motion in part, holding that Glory Express was liable to Plaintiff for damage to the lathe, but that its liability was limited by the terms of the Glory Express bills of lading and by COGSA. At that time, the court did not calculate the total amount of damages for which Glory Express was liable, because Plaintiff had not established how many "packages" had been shipped for purposes of COGSA. Glory Express then moved for summary judgment on the ground that the total number of packages shipped was six. The court granted the motion.

Plaintiff and Hyundai filed cross-motions for summary judgment on the issue of the vessel's in rem liability. Each party opposed the other's motion. The court denied both parties' motions and, instead, dismissed the case. The court reasoned that Plaintiff's use of a part of the Hyundai bill of lading to establish that the goods were delivered on board the Hyundai Liberty in good condition constituted "acceptance" of the bill of lading. The court also held that "any claim that Kukje has against the Hyundai Liberty must be brought pursuant to the Hyundai's Bills of Lading." The court dismissed the action with respect to Hyundai "without prejudice to Plaintiff's right to bring a claim that complies with the forum selection clause of the Hyundai's Bills of Lading."

Plaintiff and Hyundai timely appealed.

## STANDARDS OF REVIEW

We review for abuse of discretion the district court's decision whether to enforce a forum-selection clause. *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1998). A motion to enforce a forum-selection clause is treated

as a motion pursuant to Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered. *Id.*

We review de novo the district court's grant of summary judgment. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc).

## DISCUSSION

A.   *Whether Plaintiff is bound by the forum-selection clause in the Hyundai bill of lading*.

Plaintiff argues that the district court erred by dismissing the in rem action during the pendency of the litigation because of the forum-selection clause contained in the bill of lading. By contrast, Hyundai argues that the district court erred by not enforcing the forum-selection clause at the outset of the litigation. For the reasons that follow, we agree with Hyundai.

In paragraph 6, Plaintiff's complaint alleges that all defendants, including the vessel, "entered into contracts of affreightment, which are evidenced by a number of bills of lading, including, but not necessarily limited to[, the Glory Express bills of lading]." In paragraph 8, the complaint alleges that "defendants, and each of them, failed and neglected to discharge and deliver the Cargo pursuant to the applicable bills of lading, contracts of affreightment, and/or freight bills, in like good order and condition as when received." By contrast, says Plaintiff in paragraph 9, Plaintiff performed all "promises required to be performed by them in accordance with the terms and conditions of the applicable bills of lading." These paragraphs are part of the claim for Damage to Cargo. Paragraph 14, which is part of the claim for Breach of Contract, states that "Defendants, and each of them, materially and substantially breached and deviated from the

said applicable bills of lading, contracts of affreightment, and/or freight bills by failing to deliver the Cargo in good order and condition to the consignee or other party entitled to the Cargo." Paragraph 15 again recites that Plaintiff performed all "promises required to be performed by them in accordance with the terms and conditions of the applicable bills of lading." Paragraph 16 lists damages resulting from the "material breach of and deviation from the applicable bills of lading." Later parts of the complaint, containing claims for Negligence and Bailment, incorporate some or all of the foregoing allegations by reference.

**[1]** We have held that a cargo owner "accepts" a bill of lading to which it is not a signatory by bringing suit on it. *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993) ("At the very least, Plaintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading" under the usual rule that "a party may accept a contract by filing suit on the contract."). To avoid that holding, Plaintiff opposed the vessel's motion to dismiss in the district court by arguing that Plaintiff had not, in fact, filed suit on the Hyundai bill of lading. But the express terms of the complaint contradict Plaintiff's characterization. Plaintiff filed suit on all "applicable bills of lading," and the Hyundai bill of lading was an applicable bill of lading. It is one of the "number of bills of lading" evidencing the "contract of affreightment" covering the shipment of the lathe on the Hyundai Liberty. Accordingly, by the express terms of the complaint, Plaintiff accepted the Hyundai bill of lading by suing on it.

**[2]** It also is clear that enforcement of the clause does not contravene COGSA. In *Fireman's Fund*, we approved a similar forum-selection clause requiring that a claim for cargo damage be brought in Korea. 131 F.3d at 1338-40. In that case, the plaintiff (the consignee of the cargo covered by the bill of lading at issue) brought claims for cargo damage in both an in rem action against the vessel and an in personam

action against the vessel's charterer. *Id.* at 1339. We rejected the plaintiff's argument, which posited that COGSA barred enforcement of the forum-selection clause because in rem proceedings are not available under Korean law, and we held that the district court abused its discretion when it declined to enforce the clause. *Id.* at 1338-40. We remanded the case to district court to dismiss the in rem and in personam proceedings for "want of jurisdiction." *Id.* at 1340.

**[3]** Therefore, we can, consistent with both precedent and the terms of the bill of lading, apply the Korean forum-selection clause to Plaintiff's in rem action. The district court abused its discretion when it failed to enforce the forum-selection clause in the bill of lading at the outset of the litigation. Nonetheless, we affirm. The district court properly dismissed Plaintiff's in rem action against Hyundai, albeit for a different reason. Because the action should have been dismissed at the outset for want of jurisdiction, we do not reach the question whether the COGSA limitations of liability apply to Plaintiff's action against Hyundai.

B.   *Whether the liability limitations contained in the Glory Express bills of lading meet the COGSA "fair opportunity requirement."*

**[4]** In some instances, 46 U.S.C. app. § 1304(5) limits a carrier's potential liability for loss or damage related to the carriage of goods. It provides in pertinent part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the

shipper before shipment and inserted in the bill of lading.

**[5]** Previously, we have identified the circumstances under which a carrier is entitled to the benefit of that limitation of liability:

> A carrier may limit its liability under COGSA only if the shipper is given a "fair opportunity" to opt for a higher liability by paying a correspondingly greater charge. The carrier has the initial burden of producing *prima facie* evidence showing that it provided notice to the shipper that it could pay a higher rate and opt for higher liability. The carrier satisfies this initial burden by legibly reciting the terms of 46 U.S.C. App. § 1304(5) or language to the same effect in the bill of lading. The burden then shifts to the shipper to prove it was denied such an opportunity.

*Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1168-69 (9th Cir. 1998) (citations and internal quotation marks omitted).

Plaintiff does not contest the applicability of COGSA to the Glory Express bills of lading. It argues, instead, that Glory Express cannot avail itself of the COGSA limitations on liability because the Glory Express bills do not comply with the "fair opportunity" requirement.

The Glory Express bills of lading contain the following provision:

> In case of any loss or damage to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States per package, or in case of goods not shipped in package, per shipping unit, the value of the goods shall be deemed

to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, *unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing by the Shipper upon delivery to the Carrier and inserted in this bill of lading and extra charge paid.* In such case, if the actual value of the goods per package or per shipping unit shall exceed such declared value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value. The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except goods shipped in bulk, and irrespective of weight or measurement unit employed in calculating freight charges.

(Emphasis added.)

**[6]** That provision meets the requirements of COGSA. Its text tracks that of 46 U.S.C. app. § 1304(5). The above-quoted passage explicitly limits Glory Express' liability and informs the shipper—in this case, Doosan—that it can opt for higher liability by declaring the value of the goods and paying an extra charge. *See Vision Air*, 155 F.3d at 1169 (approving a similar provision).

Plaintiff argues that the provision's reference to a "shipping unit" invalidates the clause, because it does not echo the statutory phrase "customary freight unit" and therefore operates to reduce Glory Express' liability below the level permitted by COGSA. We rejected an identical argument in *Vision Air*, 155 F.3d at 1169-70. There, the plaintiff argued that the carrier's

attempt to limit liability to $500 per "container," as distinct from "package" or "customary freight unit," invalidated the liability limitation. We disagreed:

> When faced with a carrier's attempt to reduce liability through enterprising definitions of "package," other courts have simply redefined "package" or "customary freight unit" according to the dictates of COGSA. Other courts have not, as [the plaintiff] urges this court to do, held the limitation of liability provision void altogether.
>
> Whether or not the bill of lading "mislabeled" or "misbundled" freight units, it nonetheless gave [the plaintiff] notice that [the carrier]'s liability was limited, and invited [the plaintiff] to opt for a higher liability by paying a correspondingly greater freight charge. This is all COGSA requires.

*Id.* at 1170 (citations omitted).

**[7]** Under the standard articulated in *Vision Air*, Glory Express established a prima facie case of compliance with the "fair opportunity" requirement. Because Plaintiff argues only that Glory Express failed to establish its prima facie case, and does not attempt to show that Doosan actually was denied the opportunity to declare a higher value, we affirm the district court's holding that the Glory Express bills of lading comply with the "fair opportunity" requirement of COGSA.

AFFIRMED.