**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-4195

———————————

LIBERTY WOODS INTERNATIONAL, INC.,

Appellant

v.

THE MOTOR VESSEL OCEAN QUARTZ,
Her engines, tackle, appurtenances, etc., in rem;
DALIA SHIP HOLDINGS SA, in personam

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 1-15-cv-08843)
District Judge: Honorable Noel L. Hillman

———————————

Argued on July 11, 2017

Before:  MCKEE, AMBRO and ROTH, <u>Circuit Judges</u>

(Opinion filed: May 4, 2018)

Craig S. English, Esq.        (**ARGUED**)
Kennedy, Lillis, Schmidt & English
75 Maiden Lane
Suite 402
New York, NY 10038

      Counsel for Appellant

Richard Q. Whelan, Esq.      (**ARGUED**)
Palmer, Biezup & Henderson
190 North Independence Mall West
Suite 401
Philadelphia, PA 19106

      Counsel for Appellees

————————————

**OPINION**

————————————

ROTH, <u>Circuit Judge</u>

Liberty Woods International (LWI) brought suit for cargo damage sustained during a trip to Camden, New Jersey, on the Ocean Quartz (Vessel). Liability for the damage is governed by the carrier's bill of lading, which contains a forum selection clause requiring suit to be brought in South Korea. LWI instead sought to bring an *in rem* suit against the Vessel in the District of New Jersey, arguing that the foreign forum selection clause violates the Carriage of Goods by Sea Act (COGSA) because South Korea does not allow *in rem*

2

suits. The District Court dismissed the case, and for the following reasons, we will affirm.

**I.**

LWI purchased plywood veneer sheets, which it shipped to Camden, New Jersey, on the Vessel. Dalia Ship Holding owns the Vessel; however, in a chain of chartering, Dalia bareboat chartered[1] the Vessel to Star Bulk, which in turn time chartered it to Daiichi, which in turn time chartered it to SK Shipping. SK Shipping issued a bill of lading which specified that "[a]ny claim, dispute, suit or action concerning goods carried under this Bill of Lading, whether based upon breach of contract, tort, or otherwise shall be brought before the Seoul District Court in Korea." Both parties agree that LWI's cargo is covered by this bill of lading.

In February 2013, the Vessel arrived in Camden, and LWI discovered that its cargo was damaged. Believing the damage was caused by improper stowage, LWI threatened to arrest the Vessel. In lieu of an arrest, the Japan Ship Owners' Mutual Protection & Indemnity Association (JSO) issued to LWI and its insurers a letter of undertaking (LOU) on behalf of the Vessel, which could be used to satisfy any judgment against the Vessel *in rem* up to and including $2.75 million.

On December 23, 2015, LWI filed suit in the District of New Jersey against the Vessel *in rem* and Dalia *in personam*. Dalia answered on behalf of the *in rem* defendant.

---

[1] Bareboat chartering transfers complete control and operation of the vessel from the owner to the bareboat charterer without imposing liability for the acts of the charterer.

3

LWI later learned that it could not recover *in personam* against Dalia because of the bareboat charter. While LWI could have filed an *in personam* suit against S.K. Shipping in South Korea, it chose not to. At argument, counsel admitted that this was a strategic move on its part, because LWI felt that its suit would not be successful in South Korea.

The Vessel moved to dismiss the New Jersey suit based on the forum selection clause in the bill of lading. LWI argued that enforcing the forum selection clause would violate section 3(8) of COGSA. In relevant part, this section states:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier *or the ship* from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.[2]

LWI argued that this provision invalidates the foreign forum selection clause because South Korea does not recognize *in rem* suits. On November 9, 2016, the District Court granted the motion to dismiss under Rule 12(b)(3). LWI appealed.

---

[2] Note to 46 U.S.C. § 30701, Title I, Section 8 (emphasis added).

4

## II.[3]

### A.

In granting the motion to dismiss, the District Court erred in interpreting COGSA by confusing it with the Harter Act, a precursor to COGSA. COGSA was modeled after the Brussels Convention for the Unification of Certain Rules Relating to Bills of Lading (Hague Rules).[4] In 2006, COGSA was relocated from 46 U.S.C. §§ 1300 *et seq.*, to a note after 46 U.S.C. § 30701.[5] During this same period, the Harter Act was also moved from 46 U.S.C. §§ 190-196 to 46 U.S.C. §§ 30701-30707. As a result, COGSA was amended, not merely relocated. The relocated Harter Act provisions were the "amended" COGSA provisions. Upon analyzing 46 U.S.C. §§ 30704 and 30705, the District Court held that Congress modified COGSA's language so that it no longer

---

[3] The District Court exercised jurisdiction under 28 U.S.C. §§ 1332(a)(2) and1333(1), and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's construction of COGSA, *see e.g.*, *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005) (citation omitted), and review the District Court's decision to dismiss a complaint on the basis of forum non conveniens for abuse of discretion, *Windt v. Qwest Comms Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) ("This Court reviews a district court's dismissal of a complaint on *forum non conveniens* grounds for abuse of discretion." (citations omitted)).

[4] *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 536 (1995).

[5] 200 A.L.R. Fed. 249 (2005) (noting the original locations for COGSA and the Harter Act).

prohibited limiting a ship's liability.[6]  That, however, was a misinterpretation of COGSA.

**B.**

Nevertheless, we will affirm the judgment because the foreign forum selection clause here does not violate COGSA.

While foreign forum selection clauses were originally disfavored under COGSA, the Supreme Court later adopted a policy that better reflected the need to respect the competence of foreign forums to resolve disputes.  In the seminal case of *Indussa Corp. v. S.S. Ranborg*, the Second Circuit held a foreign forum selection clause to be invalid because it "put[] 'a high hurdle' in the way of enforcing liability, and thus [was] an effective means for carriers to secure settlements lower than if cargo [owners] could sue in a convenient forum."[7]  After *Indussa*, courts of appeal uniformly adopted this reasoning to invalidate foreign forum selection clauses[8] until the Supreme Court overruled *Indussa* in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*.

---

[6] App. 14 ("Therefore, it is evident from the plain language of COGSA that 'the carrier' may not limit its liability through provisions inserted into a bill of lading.  46 U.S.C.A. §§ 30704, 30705.  Congress did not make the same requirement of 'the ship.'").

[7] 377 F.2d 200, 203 (2d Cir. 1967) (internal citation omitted).

[8] *Sky Reefer*, 515 U.S. at 533 (collecting cases).

*Sky Reefer* held that a foreign arbitration[9] clause would not lessen carrier liability in violation of COGSA solely because litigating abroad would be more costly.[10] While acknowledging that a choice of forum and choice of law clause would be invalid as against public policy if they operated as a "prospective waiver of a party's right to pursue statutory remedies,"[11] the Court noted that "the historical judicial resistance to foreign forum selection clauses has little place in an era when . . . businesses . . . now operate in world markets."[12] Moreover, the Court stated that it would be "out of keeping with the objects of the [Hague Rules] for the courts of this country to interpret COGSA to disparage the authority or competence of international forums for dispute resolution."[13] Accordingly, the Court held that while COGSA prohibited lessening the "liability for loss or damage . . . arising from negligence, fault, or failure in the duties and obligations provided in this section," [14] COGSA did not address the "means and costs of enforcing that liability."[15] "The relevant question . . . is whether the substantive law to

---

[9] While *Sky Reefer* involved a foreign arbitration clause, the Supreme Court noted that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general[.]" *Id.* at 534 (citation omitted).

[10] *Id.*

[11] *Id.* at 540 (internal quotation marks and citation omitted).

[12] *Id.* at 537-38 (first omission in original) (internal quotation marks and citation omitted).

[13] *Id.* at 537.

[14] *Id.* at 534 (omission in original).

[15] *Id.*

be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees."[16]

LWI argues, however, that the forum selection clause here violates COGSA because *in rem* suits are themselves a substantive right guaranteed by the statute. In the alternative, LWI seems to argue that mandating a South Korean forum will effectively limit the Vessel's liability. We consider each argument in turn.

1.

LWI claims that COGSA designates *in rem* suits as substantive rights, which are violated by the instant forum selection clause. We disagree. As LWI concedes, when the plain language of a statute is clear, the text should govern.[17] An examination of the plain language of section 3(8) shows that the clause clearly protects both carrier and ship liability; any clause completely eliminating or lessening ship liability runs afoul of COGSA.[18] This does not mean, however, that section 3(8) guarantees the right to an *in rem* suit. Rather, COGSA protects ship *liability*, not any particular vehicle for imposing it. The text does not mention *in rem* suits, nor require any specific remedy for enforcing ship liability. Indeed, such an interpretation would run counter to *Sky Reefer*'s holding that COGSA does not protect procedural

---

[16] *Id*. at 539 (citation omitted).
[17] *Cooper*, 396 F.3d at 310 (citation omitted).
[18] Note to 46 U.S.C. § 30701, Title I, Section 3(8) (prohibiting "[a]ny clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability[.]").

8

means for enforcing liability. Insofar as prohibiting *in rem* suits makes enforcing ship liability more costly or less convenient, *Sky Reefer* explicitly held that liability is not improperly lessened by procedural costs.[19]

While LWI acknowledges that section 3(8) protects against lessening of ship liability, it cites this language as establishing a substantive right to *in rem* suits without adequately explaining this analytic leap. LWI argues in its brief that *in rem* suits are well established and important features of maritime law in the United States. It maintains that nothing in section 3 excludes *in rem* rights or limits *in rem* rights against the ship to a procedural device for the enforcement of an *in personam* defendant's liability. This argument turns the necessary discussion on its head; arguing that absence of express limitations grants a substantive right, especially in light of *Sky Reefer*'s limitations, is woefully inadequate.

In addition to the textual reasons for concluding that COGSA does not grant the substantive right to *in rem* suits, there are strong policy considerations that caution against such an interpretation. Requiring *in rem* suits would essentially invalidate numerous foreign forum selection clauses, as many countries do not acknowledge *in rem* suits.[20]

---

[19] *Sky Reefer*, 515 U.S. at 534 (noting the difference "between applicable liability principles and the forum in which they are to be vindicated").

[20] *See, e.g.*, *Thyssenkrupp Materials NA, Inc. v. M/V KACEY*, 236 F. Supp. 3d 835, 840 (S.D.N.Y. 2017) (acknowledging that Greek law does not recognize *in rem* actions); *Uniwire Trading LLC v. M/V Wladyslaw Orkan*, 622 F. Supp. 2d 15,

Indeed, the United States is one of the few countries that do recognize *in rem* suits. Imposing this idiosyncratic procedural requirement on other countries would be needlessly parochial. For these reasons, we conclude that COGSA section 3(8)'s substantive protections[21] encompass ship liability, not *in rem* suits specifically as the instrument to seek that recovery.[22]

---

21 (S.D.N.Y. 2008) (acknowledging that Polish law does not recognize *in rem* suits); *Matter of Topgallant Lines, Inc.*, 154 B.R. 368, 380 (S.D. Ga. 1993), *aff'd sub nom. McAllister Towing v. Ambassador*, 20 F.3d 1175 (11th Cir. 1994) (acknowledging that German law does not recognize *in rem* suits).

[21] For this reason, and because LWI has not argued that any other statute creates a substantive right to *in rem* suits, we reject LWI's argument that the forum selection clause functions as a prospective waiver of a statutory remedy, as prohibited by *Sky Reefer*.

[22] We join the Ninth Circuit in so holding. The Ninth Circuit upheld a forum selection clause specifying that Korean law would govern in *Fireman's Fund Insurance Co. v. M.V. DSR Atlantic*, holding that an *in rem* proceeding was merely a "means . . . of enforcing [COGSA] liability." 131 F.3d 1336, 1339-40 (9th Cir. 1997), *as amended* (Mar. 10, 1998) (internal quotation marks and citation omitted) (omission in original). The Ninth Circuit found no COGSA violation because the vessel presented uncontroverted evidence that Korean law was at least as favorable to the plaintiff as COGSA. *Id.* at 1340. The Ninth Circuit summarily confirmed this holding in *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1255 (9th Cir. 2005).

2.

LWI argues that even if *in rem* suits are not a substantive right, the forum selection clause here *effectively* relieves or lessens ship liability by not recognizing *in rem* actions, in violation of COGSA.  Once again, we disagree.

While *in rem* suits might appear to be an obvious way to impose ship liability, courts have recognized other avenues for imposing liability in situations where *in rem* suits are prohibited.  Courts have recognized plaintiffs' ability to obtain LOUs in lieu of bringing an *in rem* suit when they are precluded from doing so by arbitration clauses, which functionally prohibit *in rem* suits.[23]  For example, in *Thyssen Inc. v. Calypso Shipping Corporation, S.A.*, the Second Circuit held that an arbitration clause did not violate COGSA because the plaintiff accepted an LOU as full security of its claims and could have recovered against the ship pursuant to the LOU.  The Second Circuit reasoned that "[a] letter of undertaking replaces the vessel as the *res* and moots the question of the need for separate *in rem* claim."[24]  This Circuit similarly held that "[g]enerally, once a[n] LOU is issued, the letter becomes a complete substitute for the *res* and the maritime lien transfers from the vessel to the LOU."[25]

---

[23] *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 108 (3d Cir. 2009) ("An *in rem* action is cognizable only in federal court; therefore the vessel could not have been a party to the *in personam* arbitration." (citing *Madruga v. Superior Court,* 346 U.S. 556, 560 (1954))).

[24] *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 107 (2d Cir. 2002) (citations omitted).

[25] *Petroleos*, 554 F.3d at 104 (citations omitted).

11

As the Vessel argues, LWI could have obtained an LOU that would provide security for an *in personam* suit in South Korea. Moreover, the Vessel produced an unchallenged affidavit by Korean lawyer Byung-Suk Chung, claiming that South Korean law allows a party to "obtain[] security from vessel interests by arresting a vessel or attaching other assets in a foreign jurisdiction . . . to act as security for an *in personam* judgment to be obtained in the Seoul District Court."[26] Because LWI would then be able to collect from the Vessel using the LOU, the forum selection clause would not lessen or relieve the ship's liability in violation of COGSA.

In response, LWI raises a narrow argument: LWI concedes that obtaining an LOU is an accepted practice that is functionally equivalent to arresting a ship in an *in rem* suit.[27] Further, LWI does not argue that the forum selection clause prevented LWI from arresting the Vessel and obtaining a bond or an LOU. Instead, LWI argues that the forum selection clause eliminated ship liability *in this case*, because LWI received an LOU that secured only an *in rem* judgment against the Vessel. LWI does not allege that it could not have obtained an LOU unencumbered by this restriction. Indeed,

---

[26] App. 119.

[27] LWI's counsel admitted that the LOU is limited to the amount "you could get if you actually arrested the vessel. So what you get in a letter of undertaking is exactly the same thing that you get when you arrest the vessel . . .." Audio Recording of Oral Arguments held July 11, 2017 at 5:50-6:15, http://www.ca3.uscourts.gov/oral-argument-recordings. Additionally, the Federal Rules of Civil Procedure Supplemental Rules allow for a similar procedure.

12

LWI's inability to recover seems to be a consequence of its own deliberate inaction: First, it refused to file an *in personam* suit against S.K. Shipping in South Korea. Second, it did not obtain an LOU that would be applicable to an *in personam* suit. LWI's own willful limitation of alternatives, not the forum selection clause, has eliminated its ability to recover. For this reason, we hold that the forum selection clause did not effectively lessen or eliminate the Vessel's liability and that it is valid under COGSA.

Because LWI has not raised any other arguments as to how the District Court abused its discretion in enforcing the forum selection clause, we will affirm the District Court's dismissal of the suit.

## IV.

In this case, we are asked to support an interpretation of COGSA that would invalidate a host of foreign forum selection clauses for the sake of a procedural device available in few countries besides the United States. Where parties have contracted to bring suit abroad, the U.S. must be cognizant of its status as a member of a global community and respect the competence of other jurisdictions to adjudicate claims. In light of this and in light of the fact that the forum selection clause did not lessen or eliminate ship liability for cargo damage, we decline to impose LWI's restrictive interpretation of COGSA. COGSA does not invalidate the forum selection clause simply because the selected jurisdiction does not acknowledge *in rem* suits. For this reason, we will affirm the District Court's order, dismissing the action.

AMBRO, Circuit Judge, concurring

For a maritime creditor an action *in rem* is a procedure for obtaining pre-judgment security and post-judgment enforcement. In the global shipping business the debtor's ship is typically the main asset on which a judgment-creditor can rely to collect from a defendant located perhaps on the other side of the world. A court can easier locate, bring within its jurisdiction, and arrest the ship than a defendant's other foreign assets.

It is no surprise then that maritime law supplies *in rem* liability against a ship, that is, permits an action naming the ship as though it were the defendant. As is relevant here, in the United States a ship can be liable *in rem* for cargo damage, the idea being that the ship impliedly ratified the shipping contract when the carrier loaded the cargo onboard. *See Man Ferrostaal, Inc. v. M/V Akili*, 704 F.3d 77, 83 (2d Cir. 2012); *see also Pioneer Import Corp. v. Lafcomo*, 49 F.Supp. 559, 561–62 (S.D.N.Y. 1943), *aff'd*, 138 F.2d 907 (2d Cir. 1943) ("A lien against the ship arises for damage to cargo caused by improper storage.").

The Carriage of Goods by Sea Act, or COGSA, assumes the availability of an action against the ship. Indeed, § 3 of COGSA is titled, "Responsibilities and Liabilities of Carrier *and Ship*." (emphasis added). And under § 3(8), the parties to a contract for shipping goods by sea cannot agree to lessen or relieve the liability of the "carrier or the ship." However, an action *in rem* is only one way to impose liability on a ship. Although South Korean law does not allow *in rem* suits, Liberty Woods International concedes that equivalent security for *in personam* suits is available. As it chose not to pursue this avenue for relief, I agree with my colleagues that any lessening of the ship's liability is the fault of Liberty Woods, not the selection of a foreign forum.

If, however, a forum-selection clause were to operate such that a shipper could never enforce the selected forum's judgment against the value of the ship that carried the shipper's damaged goods, the clause would be unenforceable per COGSA § 3(8). *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) ("[W]ere we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right

1

to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy." (internal quotations and ellipsis omitted)). My concern is that, in another case, the common shipping industry practice of chartering and sub-chartering a ship risks placing it and its owner beyond the reach of the designated forum's *in personam* jurisdiction. Here, because sub-charterer SK Shipping Co. Ltd. operated the Ocean Quartz, the parties agree that its owner, Dalia Ship Holding S.A., bears no liability for damage to Liberty Woods' cargo. This naturally leads to a question: if Dalia Ship Holding bears no liability, how could Liberty Woods attach Dalia Ship's property—that is, the Ocean Quartz—to enforce a judgment against someone else (*i.e.*, SK Shipping)?

As noted, the parties do not contest that Liberty Woods could have enforced a judgment obtained in South Korea against the Ocean Quartz's value. So there is no reason to question that proposition here. But I am not convinced it will hold in every case. It is easy to imagine a shipowner contending that a personal judgment against a sub-charterer several steps removed should not be enforceable against the owner's vessel. The use of so-called "bareboat" or "demise" charter agreements, in which a shipowner surrenders control of the vessel to the charterer (and ultimately any sub-charterer down the line) and disclaims carrier liability, heightens the concern. An owner can credibly "seek to use the bareboat charter as a shield against *in personam* liability." *Backhus v. Transit Cas. Co.*, 532 So. 2d 447, 449 (La. Ct. App. 1988), *aff'd*, 549 So. 2d 283 (La. 1989). If the sub-charterer has few assets or becomes insolvent, the shipper might be left high and dry without compensation for damage to its cargo.

A suit *in rem* provides a means of cutting through a web of sub-charter agreements to impose liability on the ship directly and vindicate § 3(8)'s command (and thereby protect shippers in the face of judgment-proof sub-charterers). Other jurisdictions may provide other procedural vehicles to deliver these protections (as apparently South Korea does). In my view, COGSA requires that a shipper have some means to assess liability for damaged goods against the value of the ship. Because Liberty Woods has not explained why it would be impossible to vindicate its rights in the designated forum, I agree with my colleagues that we must affirm the dismissal of its *in rem* action.

2